COURT OF APPEALS OF VIRGINIA


Present: Chief Judge Fitzpatrick, Judges Elder and Kelsey
Argued at Richmond, Virginia


DERMAINE TRYELLE SHELTON

MEMORANDUM OPINION[*] BY
v.        Record No. 3012-03-2        JUDGE LARRY G. ELDER
                                      MARCH 1, 2005

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
Michael C. Allen, Judge

Todd M. Ritter (Daniels & Morgan, on brief), for appellant.

Josephine F. Whalen, Assistant Attorney General (Jerry W. Kilgore,
Attorney General, on brief), for appellee.


Dermaine Tryelle Shelton (appellant) appeals from his convictions for possession of

cocaine, possession of a firearm while in possession of cocaine, possession of a firearm by a

convicted felon, identity theft, and driving after having been declared an habitual offender. On

appeal, he contends the seizure and search that yielded evidence of these offenses violated the

Fourth Amendment and, thus, that the court erroneously denied his motion to suppress. He also

contends the evidence was insufficient to support the convictions involving firearms possession

because the evidence failed to show he constructively possessed the firearm protruding from

beneath the seat of the vehicle he was driving. We hold the evidence supported the trial court's

denial of appellant's motion to suppress and its conviction of him for the challenged firearms

offenses. Thus, we affirm.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

I.

A.

MOTION TO SUPPRESS BASED ON STOP OF VEHICLE

At a hearing on a defendant's motion to suppress, the Commonwealth has the burden of proving that a warrantless search or seizure did not violate the defendant's Fourth Amendment rights.  Simmons v. Commonwealth, 238 Va. 200, 204, 380 S.E.2d 656, 659 (1989).  On appeal, we view the evidence in the light most favorable to the prevailing party, granting to it all reasonable inferences fairly deducible therefrom.  Commonwealth v. Grimstead, 12 Va. App. 1066, 1067, 407 S.E.2d 47, 48 (1991).  "We are bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them[,] and we give due weight to the inferences drawn from those facts by resident judges and local law enforcement officers."  McGee v. Commonwealth, 25 Va. App. 193, 198, 487 S.E.2d 259, 261 (1997) (en banc) (citing Ornelas v. United States, 517 U.S. 690, 699, 116 S. Ct. 1657, 1663, 134 L. Ed. 2d 911 (1996)).  However, we review *de novo* the trial court's application of defined legal standards to the particular facts of the case.  Shears v. Commonwealth, 23 Va. App. 394, 398, 477 S.E.2d 309, 311 (1996); see Ornelas, 517 U.S. at 699, 116 S. Ct. at 1663.

A police officer may conduct an investigatory stop of a motor vehicle if he has "articulable and reasonable suspicion" that the operator is unlicensed, the vehicle is unregistered, or the vehicle or an occupant is otherwise subject to seizure for violating the law.  Murphy v. Commonwealth, 9 Va. App. 139, 143, 384 S.E.2d 125, 127 (1989) (citing Delaware v. Prouse, 440 U.S. 648, 663, 99 S. Ct. 1391, 1401, 59 L. Ed. 2d 660 (1979)).  "Motor vehicles operating on the highways of this State are required to comply with the statutes relating to lighting equipment in effect at the time of their operation."  Hall v. Hockaday, 206 Va. 792, 798, 146 S.E.2d 215, 219 (1966).  Therefore, a police officer who has "articulable and reasonable suspicion" that the

lighting equipment on a particular vehicle does not comply with relevant statutes may conduct an investigatory stop of that motor vehicle and its driver in order to confirm or dispel his suspicion.

> To determine whether an officer has articulated a reasonable basis to suspect criminal activity, a court must consider the totality of the circumstances, including the officer's knowledge, training, and experience. "[A] trained law enforcement officer may [be able to] identify criminal behavior which would appear innocent to an untrained observer."

Freeman v. Commonwealth, 20 Va. App. 658, 661, 460 S.E.2d 261, 262 (1995) (quoting Taylor v. Commonwealth, 6 Va. App. 384, 388, 369 S.E.2d 423, 425 (1988)) (citation omitted).

Code § 46.2-1020 provides in relevant part as follows:

> Any motor vehicle may be equipped with one or two fog lights, one or two auxiliary driving lights if so equipped by the manufacturer, two daytime running lights, two side lights of not more than six candlepower, an interior light or lights of not more than 15 candlepower each, and signal lights.

> \* \* \* \* \* \* \*

> Unless such lighting device is both covered and unlit, no motor vehicle which is equipped with any lighting device other than lights required or permitted in this article, required or approved by the Superintendent, or required by the federal Department of Transportation shall be operated on any highway in the Commonwealth. *Nothing in this section shall permit any vehicle, not otherwise authorized, to be equipped with colored emergency lights, whether blinking or steady-burning.*

(Emphasis added).

Here, appellant contends he was seized when State Trooper R.T. Hankins raised his hand toward appellant when he first crossed in front of appellant's vehicle and that the trooper's observation of the lights on his front bumper was insufficient to permit the stop because the lights were fog lights permitted by the statute. We disagree.

We assume without deciding that a seizure occurred when Trooper Hankins crossed in front of appellant's vehicle while appellant was stopped and waiting to pay his toll, at which time

Trooper Hankins may have raised his hand to warn appellant of his intent to cross and his desire to do so safely before appellant proceeded through the toll plaza. Nevertheless, the evidence, viewed in the light most favorable to the Commonwealth, supports a finding that Trooper Hankins had reasonable suspicion to detain appellant to investigate whether the lights on the vehicle's front bumper violated Code § 46.2-1020. Trooper Hankins testified that the lights he observed on the front bumper appeared to be blue in violation of Code § 46.2-1020. He said the lights were "unique," which was what brought the vehicle to his attention in the first place, and that they appeared to be "after-market" lights, i.e., lights added after purchase rather than lights with which the vehicle had been equipped by the manufacturer. He agreed that fog lights equipped with halogen bulbs that "illuminat[e] . . . a cool blue" would not necessarily violate the statute but that "[e]ach vehicle has to be taken on a case-by-case basis."

The trial court examined photographs of the lights admitted into evidence and agreed that, although

> the lights have a clear lens, . . . it appears they [also] have something blue . . . presumably a blue bulb or some kind of blue material inside the clear plastic lens . . . . The bottom half of it at least, is what it looks like to me -- within the lens.

As a result, it concluded

> the blue appearance of the fog lights as depicted in Commonwealth's Exhibits 1 and 2, because the blue lights constitute the color of emergency lights not permitted by law, does provide sufficient suspicion for the trooper to act as he did.

Appellant did not dispute that if the lights were, in fact, blue, Code § 46.2-1020 prohibited him from operating the vehicle with those lights on its bumper, even if they were "unlit," unless those lights were also "covered." Because the evidence supported the trial court's finding that Trooper Hankins had reasonable suspicion to believe appellant's operating the vehicle without covering the lights at issue violated Code § 46.2-1020, we hold the denial of the motion to suppress was

- 4 -

not error.[1]  That Trooper Hankins could not determine the color of the lights when appellant illuminated them for him during the stop and chose not to issue appellant a citation for violating Code § 46.2-1020 does not require a different result.

B.

SUFFICIENCY OF EVIDENCE TO PROVE POSSESSION OF FIREARM

Under familiar principles of appellate review, we examine the evidence in the light most favorable to the Commonwealth, granting to the evidence all reasonable inferences fairly deducible therefrom.  Martin v. Commonwealth, 4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987).  Circumstantial evidence is sufficient to support a conviction provided it excludes every reasonable hypothesis of innocence flowing from the evidence.  Hamilton v. Commonwealth, 16 Va. App. 751, 755, 433 S.E.2d 27, 29 (1993).

The possession necessary to support convictions for the possession of a firearm while in possession of cocaine and possession of a firearm by a convicted felon may be actual or constructive.  See, e.g., Logan v. Commonwealth, 19 Va. App. 437, 444, 452 S.E.2d 364, 368 (1994) (en banc).  Establishing constructive possession requires proof "that the defendant was aware of both the presence and character of the [item] and that it was subject to his dominion and control."  Powers v. Commonwealth, 227 Va. 474, 476, 316 S.E.2d 739, 740 (1984).  A person's ownership or occupancy of premises on which the subject item is found, proximity to the item, and statements or conduct concerning the location of the item are probative factors to be considered in determining whether the totality of the circumstances supports a finding of possession.  Archer v. Commonwealth, 26 Va. App. 1, 12, 492 S.E.2d 826, 831-32 (1997).

---

[1] Because we hold the evidence regarding the fog lights provided reasonable suspicion for the stop, we need not consider the impact of the broken marker light on the existence of reasonable suspicion for the stop.

- 5 -

Possession "need not always be exclusive.  The defendant may share it with one or more."

Josephs v. Commonwealth, 10 Va. App. 87, 89, 390 S.E.2d 491, 497 (1990) (en banc).

The only reasonable hypothesis flowing from the evidence in this case, viewed in the light most favorable to the Commonwealth, is that appellant was aware of the presence of the firearm protruding from beneath the front seat of the vehicle he was driving and that it was subject to his dominion and control.  The evidence, so viewed, established that appellant was traveling alone in the vehicle and gave Trooper Hankins a false name "when [Hankins] first stopped him."  When Hankins began to search the vehicle, he opened the driver's side door of the car appellant had just been driving, and he "immediately saw [a] handgun under the driver's seat."  "[A] good portion of the butt of the weapon was visible" to Hankins, and he testified that he could see it "from looking down over the seat."  On the vehicle's center console, immediately adjacent to the driver's seat, Hankins found a neatly folded dollar bill containing cocaine that appellant admitted was his.  Immediately behind the gearshift and beneath the hand brake, Hankins found a bullet of the same caliber as the weapon.

Elsewhere in the car, Hankins found an identification card bearing appellant's name and photograph.  Although Hankins confronted appellant with the i.d. card, appellant continued to deny his true identity and admitted he was Dermaine Shelton only after fingerprinting affirmatively established his identity.  When Trooper Hankins asked appellant why he had provided a false name, he said he did so "because of the mother fucking gun."  Although appellant was an habitual offender and had an outstanding capias for his arrest in another jurisdiction, he mentioned only the presence of the firearm as the reason he gave a false name.

Although appellant denied knowing the firearm was in the car before Trooper Hankins found it, his giving Trooper Hankins a false name *before* the firearm was discovered and his later admitting that he did so "because of the . . . gun"--coupled with the location of the gun in plain

- 6 -

view beneath his feet and a bullet of the same caliber in plain view beside him on the center console, in close proximity to cocaine he admitted was his--established that he knowingly and intentionally exercised at least joint possession of the loaded firearm and that it was subject to his dominion and control.

II.

For these reasons, we hold the evidence supported the trial court's denial of appellant's motion to suppress and its conviction of him for the challenged firearms offenses.  Thus, we affirm all challenged convictions.

<u>Affirmed.</u>