COURT OF APPEALS OF VIRGINIA


Present:  Judges Elder, McClanahan and Senior Judge Fitzpatrick
Argued at Salem, Virginia


SHERMAN RICKY JONES

                                                MEMORANDUM OPINION* BY
v.        Record No. 2390-06-3                   JUDGE ELIZABETH A. McCLANAHAN
                                                FEBRUARY 19, 2008
COMMONWEALTH OF VIRGINIA


                FROM THE CIRCUIT COURT OF THE CITY OF WAYNESBORO
                          Humes J. Franklin, Jr., Judge

           John I. Hill (Poindexter, Schorsch, Jones & Hill, P.C., on brief),
           for appellant.

           Craig W. Stallard, Assistant Attorney General (Robert F. McDonnell,
           Attorney General, on brief), for appellee.


        Sherman Ricky Jones appeals his convictions of murder and use of a firearm in

commission of a felony alleging the violation of his right to a speedy trial under the United

States and Virginia Constitutions and a violation of his Miranda rights.  We affirm the judgment

of the trial court.

                                    I.  Speedy Trial

        Sherman Jones was arrested and placed into custody on charges of first-degree murder

and use of a firearm in commission of a felony in December 2004.  He waived his right to a

preliminary hearing and was indicted on those charges on March 14, 2005.  The Commonwealth

determined it needed to try one of his codefendants, Aimee Jacques, first, to obtain his testimony

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

before trying Jones and another codefendant.[1]  Jacques' trial was scheduled for a date in June

2005, and Jones' trial was scheduled, without objection, for August 1 and 2, 2005.[2]  Jacques'

June trial resulted in a hung jury.  The court scheduled a new trial for Jacques on the dates

scheduled for Jones' trial and continued Jones' trial to September 27 and 28, 2005.[3]  The

Commonwealth moved to *nolle prosequi* the indictments against Jones, and the motion was

granted by the court on July 11, 2005.[4]  The Commonwealth re-indicted Jones that same day.

Jacques' August trial also resulted in a hung jury.  As a result, the court continued the Jones trial

to November 22 and 23, 2005.

On September 9, 2005, Jones moved to dismiss his indictments pursuant to Code

§ 19.2-243,[5] the speedy trial statute.  Jones argued the time period for bringing him to trial

should run from the date of the first indictment, March 14, and the failure to prosecute him

---

[1] At the hearing on Jones' motion to dismiss on speedy trial grounds, the prosecutor explained he assumed Jacques would assert his Fifth Amendment privilege and refuse to testify at Jones' trial if the charges against Jacques were unresolved.

[2] Sherman Jones and Tony Jones were scheduled to be tried together.

[3] The order granting the continuance reflects that the cases were continued on the joint motion of the Commonwealth and the defendant.  On appeal, Jones contends he did not have an opportunity to object to the motion.

[4] The record reflects that the Commonwealth made this motion after codefendant Tony Jones filed a motion to dismiss on speedy trial grounds and because, due to the hung jury, it could not try both Jacques and the Jones defendants within the five-month time frame set forth in the speedy trial statute.

[5] Code § 19.2-243 provides, in pertinent part, that

> [w]here a district court has found that there is probable cause to believe that an adult has committed a felony, the accused, if he is held continuously in custody thereafter, shall be forever discharged from prosecution for such offense if no trial is commenced in the circuit court within five months. . . . If there was no preliminary hearing in the district court, or if such preliminary hearing was waived by the accused, the commencement of the running of the five . . . months . . . shall be from the date an indictment or presentment is found against the accused.

within the five-month time period following the date of his indictment violated the speedy trial statute.[6]  The court denied the motion finding good cause for the motion to *nolle prosequi* the original indictments and no prosecutorial misconduct, concluding that the five-month period ran from the date of the second indictment, July 11.

In November, seven days before trial was to begin, Jones moved the court to dismiss his prosecution on the basis of his constitutional right to a speedy trial.[7]  Counsel, arguing on behalf of Jones, explained that he did not argue a violation of his constitutional right at the prior hearing because the issue was "not ripe yet when we first argued [a violation of the statutory right]." The court denied this motion and granted the Commonwealth's motion to try all three codefendants together.[8]  The court tried Jones and the other two codefendants on November 22 and 23, 2005, before a jury that convicted Jones of murder and use of a firearm in the commission of a felony.

Jones argues the Commonwealth's 352-day delay in bringing him to trial violated his right to a speedy trial under the Sixth Amendment to the United States Constitution and Article I, Section 8 of the Virginia Constitution.[9]  Jones' argument, however, assumes we must take into consideration the time that elapsed under his original indictment.

---

[6] Despite the fact that the dates for trial had previously been set for September, outside the five-month period, Jones did not demand a trial but waited until after that period had run to make his motion.

[7] In September, Jones specifically declined to assert his constitutional right to a speedy trial and agreed to the November dates.

[8] The court found good cause for the joint trials based on the Commonwealth's argument that almost all of the forty witnesses subpoenaed would be the same for all three defendants and due to speedy trial concerns the Commonwealth had regarding Sherman Jones and Tony Jones.

[9] The trial court's order denying his motion to dismiss on the ground of the statutory right to speedy trial is not before us on appeal.  Jones raised this issue in his petition for appeal but his appeal was denied on that issue.

In reviewing speedy trial guarantees[10] involving successive indictments for the same crime, the Supreme Court of Virginia has ruled that where there has been a *nolle prosequi* of the first indictment, a claim for violation of the constitutional speedy trial right must relate only to the prosecution of the second indictment. Harris v. Commonwealth, 258 Va. 576, 520 S.E.2d 825 (1999).[11] Because the trial court granted the motion for *nolle prosequi* of the first indictment and found good cause to do so – a ruling not before us on appeal -- Jones' "claim for a violation of his constitutional right to a speedy trial relates only to the prosecution of the second indictment." Id. at 586, 520 S.E.2d at 831.

There were only four and a half months between Jones' second indictment and trial. And Jones acknowledged to the trial court, there would be no constitutional speedy trial concern until the delay reached ten months. Indeed, as the United States Supreme Court has said, the "lower [federal] courts have generally found postaccusation delay 'presumptively prejudicial' at least as it approaches one year." Doggett v. United States, 505 U.S. 647, 652 n.1 (1992) (citations omitted); see also United States v. King, 909 F. Supp. 369, 372 (E.D. Va. 1995), aff'd, 110 F.3d 61 (4th Cir. 1997). Thus, the time between his second indictment and his trial is well short of the

---

[10] The speedy trial guarantees in the United States and Virginia Constitutions are reviewed without distinction. See Holliday v. Commonwealth, 3 Va. App. 612, 615, 352 S.E.2d 362, 364 (1987); see also Fowlkes v. Commonwealth, 218 Va. 763, 764 n.2, 240 S.E.2d 662, 663 n.2 (1978). The Sixth Amendment to the United States Constitution provides, in pertinent part, that "in all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." U.S. Const. amend. VI. This right attaches upon arrest or indictment, whichever occurs first. See United States v. MacDonald, 456 U.S. 1, 6-7 (1982). Article I, Section 8 of the Virginia Constitution grants the same right. In determining whether a defendant's constitutional rights to a speedy trial have been violated, the United States Supreme Court has identified certain factors for a court to consider if the length of delay is "presumptively prejudicial." Barker v. Wingo, 407 U.S. 514, 530 (1972). "Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." Id. at 530.

[11] The United States Supreme Court has recognized that "[o]nce charges are dismissed, the speedy trial guarantee is no longer applicable" in determining that the time period between dismissal of military charges and a subsequent civil indictment is not considered in determining a violation of speedy trial rights. MacDonald, 456 U.S. at 8. The issue of whether the military proceedings in that case triggered defendant's Sixth Amendment rights was not raised.

delay which courts have found presumptively prejudicial. Furthermore, Jones' conviction occurred within the limits of Code § 19.2-243 and this Court has stated that "[a] process which results in a trial on the merits within the statutorily described time does not support a presumption of prejudice." Sheard v. Commonwealth, 12 Va. App. 227, 231, 403 S.E.2d 178, 180 (1991). Until there is a delay that is presumptively prejudicial, there is no need to inquire into the other factors that go into the analysis of whether a violation of Jones' constitutional right to a speedy trial has occurred. See supra, fn. 9. Therefore, the period between the second indictment and Jones' conviction was not a violation of his constitutional right to a speedy trial.

## II. Miranda Rights

After Jones was in custody and during an interview with the investigating officer, Mike Wilhem, on December 6, 2005, Jones invoked his right to counsel. Subsequently he was taken to the magistrate's office for booking. Officer Andrea Leavell, the processing officer for the Waynesboro Police Department, was charged with booking Leavell. Leavell allowed Jones to make some telephone calls and engaged in conversation with Jones regarding various subjects, including whether he had spoken to his mother, whether he knew certain individuals incarcerated in Buckingham, and how the facilities were there. During this conversation and while holding the warrants on which she was processing him, Leavell remarked that she would be scared to death to be charged with something like this and Jones responded, "I guess I was just in the wrong place at the wrong time." Leavell did not follow-up and did not ask any questions about Jones' statement. Jones then asked her what exactly he was charged with and how much time he could get. Prior to trial, Jones moved to suppress the statement he made regarding being in the wrong place at the wrong time arguing Leavell subjected him to a custodial interrogation in

violation of his <u>Miranda</u> rights.[12]  The trial court denied the motion finding there was no interrogation and the statement was voluntary.

Jones argues the trial court erred in denying his motion to suppress because Officer Leavell subjected him to a custodial interrogation after he invoked his right to counsel in violation of his <u>Miranda</u> rights and his rights under the Fifth, Sixth, and Fourteenth Amendments.[13]

On appeal of a trial court's ruling on a motion to suppress, "the burden is upon [the appellant] to show that the ruling . . . constituted reversible error." <u>McGee v. Commonwealth</u>, 25 Va. App. 193, 197, 487 S.E.2d 259, 261 (1997) (*en banc*) (citation and internal quotation marks omitted).  We view the evidence in the light most favorable to the Commonwealth, the prevailing party below, granting to it all reasonable inferences fairly deducible therefrom.  <u>See</u> <u>Commonwealth v. Spencer</u>, 21 Va. App. 156, 159, 462 S.E.2d 899, 901 (1995).  Although we give deference to the trial court's findings of fact, we review *de novo* whether the challenged evidence satisfied constitutional requirements.  <u>See</u> <u>Jackson v. Commonwealth</u>, 267 Va. 666, 672, 594 S.E.2d 595, 598 (2004).

The Fifth Amendment provides that no "person . . . shall be compelled in any criminal case to be a witness against himself."  U.S. Const. amend V.  And the Fourteenth Amendment makes this privilege applicable to the states.  <u>See</u> <u>Malloy v. Hogan</u>, 378 U.S. 1 (1964).  In <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966), the United States Supreme Court formulated certain

---

[12] In his motion to suppress, Jones attached a transcript of a recorded conversation between Jones and Leavell.  He also references that transcript in his brief.  However, it is clear from the record and confirmed at oral argument that the transcript was made of a conversation that took place on a later day and is not relevant.

[13] Although appellant included a Sixth Amendment violation in his "question presented," he does not make any argument that his Sixth Amendment right to counsel was violated or cite to any authority to support a Sixth Amendment violation.  Therefore, we do not consider this issue on appeal.  Rule 5A:20(c).

safeguards to protect the Fifth and Fourteenth Amendments' prohibition against self-incrimination. According to the Court, "without proper safeguards the process of in-custody interrogation of persons suspected or accused of crime contains inherently compelling pressures which work to undermine the individual's will to resist and to compel him to speak where he would not otherwise do so freely." Id. at 467. One of the safeguards formulated by the Court in Miranda was to have counsel present during a custodial interrogation. And when the accused has "expressed his desire to deal with the police only through counsel, [he] is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police." Edwards v. Arizona, 451 U.S. 477, 484-85 (1981).

The Miranda safeguards only come into play when the accused is subjected to interrogation. Rhode Island v. Innis, 446 U.S. 291, 300-01 (1980).

> "Any statement given freely and voluntarily without any compelling influences is, of course, admissible in evidence. *The fundamental import of the privilege while an individual is in custody is not whether he is allowed to talk to the police without the benefit of warnings and counsel, but whether he can be interrogated*. . . . Volunteered statements of any kind are not barred by the Fifth Amendment."

Id. at 299-300 (quoting Miranda, 384 U.S. at 478) (emphasis in original). Interrogation, as conceptualized in Miranda, "must reflect a measure of compulsion above and beyond that inherent in custody itself." Id. at 300. It refers not only to express questioning, but also to any "words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." Id. at 301. The police are not held accountable for the unforeseeable results of their words or actions. Id. at 301-02.

Applying these principles, we conclude the statement by Jones that he guessed he "was just in the wrong place at the wrong time" was not made in response to an interrogation but was a voluntary statement. Certainly, Officer Leavell did not expressly question Jones. Her remark that she would be scared to death to be facing the same charges was also not the "functional equivalent" of express questioning since it was not "reasonably likely to elicit an incriminating response" from Jones. See id. at 301. In determining whether police conduct constitutes interrogation, we must keep in mind the purpose of the decisions in Miranda and Edwards in "preventing government officials from using the coercive nature of confinement to extract confessions that would not be given in an unrestrained environment." Arizona v. Mauro, 481 U.S. 520, 529-30 (1987). That purpose was not implicated by the dialogue between Leavell and Jones in which Jones was not subject to any compelling influences by Leavell. Thus, the statement by Jones was voluntary and not the product of interrogation. Accordingly, the trial court did not err in denying the motion to suppress and allowing the introduction of the testimony of Officer Leavell.

For the foregoing reasons, the judgment of the trial court is affirmed.

Affirmed.